Vivian **STENVIK,** surviving spouse and Trustee for the heirs and next of kin of Orland Stenvik, Appellant,

v.

Willard **CONSTANT,** Respondent.

No. C7–92–2107.

Court of Appeals of Minnesota.

July 6, 1993.

Review Denied Aug. 24, 1993.

John M. Colosimo, Colosimo, Patchin, Aronson & Kearney, Ltd., Virginia, for Vivian Stenvik.

H. Jeffrey Peterson, James R. Cope, Cope & Peterson, P.A., Virginia, for Willard Constant.

Considered and decided by FORSBERG, P.J., and KLAPHAKE and SCHULTZ, JJ.

## OPINION

HAROLD W. SCHULTZ, Judge.[*]

Appellant Vivian Stenvik asserts the trial court erred in (1) refusing to hold that OSHA applied to respondent Willard Constant; (2) refusing to hold as a matter of law that Constant was Orland Stenvik's employer; (3) refusing to instruct the jury on the common law duty of an employer to employees; and (4) instructing the jury to discount future damages to present value.

## FACTS

In July 1988, respondent Willard Constant began remodeling a house he owned, located next door to his home. He intended to rent it or sell it, possibly to his daughter and son-in-law. By October 1988, the remodeling was almost complete. Constant then hired Orland Stenvik, a man he had known for 25 years. They had both worked as mechanics at Reserve Mining Company and occasionally met for coffee, sometimes accompanied by their wives. They were not close friends, however. Neither was in the business of carpentry or construction.

Constant knew that Stenvik, 61, who was retired, wanted to earn extra money. Constant agreed to pay Stenvik $5.00 per hour, payable weekly, later changing this amount to $8.00 per hour, and told Stenvik he would pay up to $500 for the project. At least three other men also worked on the

house, but it is unclear whether they were hired or paid by Constant or his daughter.

Stenvik began work on the house on October 1, 1988. Constant gave Stenvik materials for remodeling, for example, lumber and nails. He also provided tools such as power tools, ladders, and scaffolding. Stenvik brought his own tool tray, hammer, measuring tape, and possibly power tools. Constant gave some direction to Stenvik, for example, instructing him to work on the trim board or the subfloor. Constant testified, however, that he did not supervise Stenvik or instruct him on how to do the work.

Stenvik took one day off, with Constant's permission, to work at a gas station. Constant testified, "I told him you can work here when you can. I didn't make no restrictions on his coming and going. That was up to him."

On October 5, while working on the house, Stenvik fell from a four-foot-high scaffold onto a concrete slab. He died six months later as a result of head injuries suffered in the accident.

Stenvik's wife, Vivian, sued Constant in a wrongful death action, alleging Constant was negligent in permitting Stenvik to use a scaffold without guard rails and midrails. She argued that Constant violated standards for scaffolding promulgated under the Minnesota Occupational Safety and Health Act (OSHA).

Constant argued at trial that, first, OSHA did not apply to him, and second, the scaffold was safe.

■ Minnesota OSHA requires employers to abide by detailed safety requirements for scaffolds. Ivan Russell, Minnesota OSHA director for 17 years, and now a consultant, testified that OSHA did not apply to this case:

> I believe this was a domestic or an individual that just needed some help on fixing his house. Did not really intend to be an employer nor did Mr. Stenvik really think that he was a full time employee.

[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Russell testified at trial that the scaffold did not violate OSHA standards and, after examination of the scaffold, had concluded it was safe. Other workers who had used the scaffold testified it was sturdy and safe. Mrs. Stenvik's expert, an engineer, testified that Constant's scaffold did not meet OSHA standards.

Constant also argued that Stenvik suffered from dizziness, which could have caused his fall and which a guard rail would not have helped. A co-worker testified that Stenvik told him, "If I don't take [blood pressure pills], or forget to take them * * * I get dizzy." Mrs. Stenvik denied that Stenvik suffered from dizziness.

Following the accident, Mrs. Stenvik applied for benefits from an insurance company, and sent Constant an insurance form entitled "Employer's Statement." Constant testified he signed the form to help Mrs. Stenvik, and not as an admission of employment status.

At trial, Michael Behr, a forensic economist, testified that the discounted present value of Mrs. Stenvik's net loss as a result of her husband's death was $213,338. The jury assessed damages of $100,000, but found Stenvik 80% negligent and Constant 20%. Mrs. Stenvik thus recovers nothing.

## ISSUES

I. Did the trial court err in holding that OSHA does not apply to Stenvik and Constant's work arrangement?

II. Did the trial court err in refusing to rule that as a matter of law Stenvik was Constant's employee?

III. Did the trial court err in refusing to instruct the jury on the common law duty of an employer to provide a safe workplace?

IV. Did the trial court err in instructing the jury it must reduce the amount of Vivian Stenvik's award to present value?

1. Other definitions similarly provide little guidance:

## ANALYSIS

### I.

Mrs. Stenvik argues the scaffold from which her husband fell violated OSHA standards and therefore the trial court erred in refusing to instruct the jury that violation of OSHA standards was negligence per se. First, we note that the evidence as to the safety of the scaffold was disputed. Second, we agree with the trial court that OSHA does not apply to this case.

■■■ This court upholds a trial court's refusal to grant a proposed instruction unless the refusal is an abuse of discretion. *Larson v. Powder Ridge Ski Corp.*, 432 N.W.2d 774, 776 (Minn.App.1988). On appeal, this court need not defer to the trial court on issues of law. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

■■■ Under some circumstances, violation of a statute is negligence per se. *Butler v. Engel*, 243 Minn. 317, 322, 68 N.W.2d 226, 230 (1954). Among other things, a plaintiff asserting negligence per se must show that the victim falls within the class of people the statute is intended to protect. *See Johnson v. Farmers & Merchants State Bank*, 320 N.W.2d 892, 897 (Minn.1982).

Before trial, the trial court held that OSHA did not govern Stenvik and Constant's work relationship because:

> Stenvik was not a person in a category of people that the statute was enacted to benefit. I am persuaded that a homeowner such as the defendant in this case, was not intended to come under OSHA. Minnesota OSHA defines "employer" as a person who has one or more employees and includes any person acting in the interest of, or as a representative of, an employer and includes the state and all of its political subdivisions.

Minn.Stat. § 182.651, subd. 7 (1988).

The plain language of this definition provides little guidance on the applicability of OSHA to this case.[1] The federal OSHA

"**Employee**" means any person suffered or permitted to work by an employer, including any person acting directly or indirectly in the

statute defines employer as "a person engaged in a business affecting commerce who has employees." 29 U.S.C.A. § 652(5) (West 1985). This definition is also unhelpful. We were unable to find case law examining the application of OSHA to a fact situation similar to this one. Therefore, we must determine the intent of the legislature without assistance from prior cases. *See* Minn.Stat. § 645.16 (1992) (object of statutory interpretation is to ascertain legislative intent).

When determining legislative intent, courts are to consider, among other things, the necessity for the law, the mischief to be remedied, object to be attained, consequences of a particular interpretation, and legislative and administrative interpretations of the statute. *Id.*

■ We agree with the former OSHA director and the trial court that OSHA was not intended to apply to this kind of situation. It is true that OSHA was intended to provide the broadest possible protections for employees. *See* Minn.Stat. § 182.65, subd. 2 (1988) (legislature declares its purpose to assure every worker in Minnesota safe and healthful working conditions). It is also true that even employers with only one employee are bound by OSHA. Minn. Stat. § 182.651, subd. 7 (1988).

Nonetheless, we agree with the trial court that application of OSHA to this case would have serious consequences. As the trial court aptly noted:

> The consequences of holding that OSHA applies to Mr. Stenvik's arrangement with Mr. Constant would be dangerous. Mr. Constant hired Mr. Stenvik to do siding work in a manner no different than a lady who has hired a neighbor kid to mow the grass. If this court were to hold that OSHA applies, a chilling effect on the willingness to hire others to work would be created. Nearly every conceivable work arrangement would be subject

to OSHA, and such a reading of the statute would be impractical.

We agree with the trial court that the legislature cannot have intended OSHA to apply in this kind of casual contracting. Accordingly, we affirm the trial court's determination that OSHA did not govern Constant and Stenvik's relationship.

## II.

Mrs. Stenvik argues that, regardless of whether OSHA applies, the trial court erred in refusing to rule as a matter of law that Constant was Stenvik's employer. We disagree.

■ The existence of an employment relationship is one of fact if it turns on disputed testimony. *Flament–Hampshire, Inc. v. Schaefer,* 391 N.W.2d 11, 13 (Minn. App.1986).

■ Common law factors traditionally used to determine the nature of a work relationship are: (1) the right to control the means and manner of performance; (2) the mode of payment; (3) furnishing of materials and tools; (4) control of premises where work is performed; and (5) right of employer to hire and discharge. *Wise v. Denesen Insulation Co.,* 387 N.W.2d 477, 479 (Minn. App.1986). The right of control is the most important and determinative factor. *Flament–Hampshire,* 391 N.W.2d at 13. Here, the parties disputed the right of control Constant had over Stenvik.

■ Mrs. Stenvik argues that Constant had a significant right of control over Stenvik. She notes that Constant decided whether Stenvik was to work inside the house on subflooring or outside putting up trimboard; that Constant testified he had the right to hire and fire Stenvik; and that Stenvik asked Constant's permission to take a day off. Additionally, Constant walked over to the remodeled house every day to assess the progress.

interests of or as a representative of, an employer, and shall include state, county, town, city, school district, or governmental subdivision.

**"Place of employment"** means any factory, plant, foundry, construction site, farm, work-

place, premises, vehicle or any other work environment where any employee is during the course of employment.

Minn.Stat. § 182.651, subds. 9, 10 (1988).

Although the above factors are evidence of an employment relationship, we find they are ultimately inconclusive. Other factors suggest no employment relationship existed. Constant testified he did not supervise Stenvik or tell him how to do his work. He testified that Stenvik was free to come and go as he pleased. The two men were friends and former co-workers, and thus it is arguable they did not consider themselves to be in an employment relationship. Because we find the evidence on Constant's right to control Stenvik was disputed and inconclusive, the trial court appropriately declined to rule that an employment relationship existed as a matter of law. Accordingly, we affirm.

### III.

■ Mrs. Stenvik argued the trial court erred in failing to instruct the jury on the common law duty of an employer to an employee. A trial court has wide discretion in the language used in jury instructions, and denial of a requested instruction is not grounds for a new trial if the instruction correctly states the applicable law. *State Bank of Hamburg v. Stoeckmann*, 417 N.W.2d 113, 116 (Minn.App.1987), *pet. for rev. denied* (Minn. Feb. 17, 1988).

■ Mrs. Stenvik asked the trial court to instruct the jury that an employer owes a non-delegable duty of reasonable care to prevent injury to his employee and to furnish an employee with a reasonably safe place to work. *See Baumgartner v. Holslin*, 236 Minn. 325, 327, 52 N.W.2d 763, 765 (1952). Instead, the trial court gave two other instructions. It instructed the jury on the duty of care owed by all persons to each other, namely that "[a] person may assume that every other person will use reasonable care and will obey the law until the contrary reasonably appears." The court also instructed the jury on the duty of a landowner to an entrant, specifically:

a duty to use reasonable care to inspect and repair his premises and warn an entrant who comes upon his premises to protect the entrant from an unreasonable risk of harm caused by the condition of the premises while he is on the premises.

This is a close question. We conclude that the requested instruction on the duty of an employer is not significantly different from the instructions that were given. All three instructions essentially require a person to exercise reasonable care toward another. As such, we do not believe it was error for the trial court to refuse to give the instruction regarding an employer's duty of care.

■ Even assuming the instruction was erroneous, Mrs. Stenvik is required to show that the instruction resulted in substantial prejudice. *Stoeckmann*, 417 N.W.2d at 116. She has not done so. She has not shown that the requested instruction might have changed the jury's verdict. She has not shown how a slight difference in the wording of one instruction could have tipped the balance and changed the jury's apportionment of Stenvik's negligence from 80% to less than 50%. Accordingly, we affirm the trial court's refusal to instruct the jury on an employer's duty to an employee.

### IV.

Finally, Mrs. Stenvik argues the trial court erred in instructing the jury to discount future damages to present value when the damage figure presented at trial had already been discounted to present value. First, we note that because the jury found Stenvik to be 80% negligent, Vivian recovers nothing. *See* Minn.Stat. § 604.01, subd. 1 (1988) (if plaintiff's contributory fault is greater than defendant's, then plaintiff recovers nothing). Thus, the amount of damages she was awarded is irrelevant.

■ Even if relevant, however, the judge's instruction of discounting was not error. Minnesota law permits courts to instruct juries to discount future loss damages. *See Olsen v. Special Sch. Dist. No. 1*, 427 N.W.2d 707, 714 (Minn.App.1988). Furthermore, Behr, the expert who testified to Stenvik's net loss, explained at trial that his future loss figures had been discounted to present value. He then explained the concept of discounting in con-

siderable detail. The jury thus was aware that his future loss projections were already discounted. We therefore affirm the trial court's instruction on discounting future loss.

## DECISION

The trial court did not abuse its discretion in refusing to instruct the jury that violation of OSHA was negligence per se because it correctly determined that OSHA did not apply to this case. Because evidence of Constant and Stenvik's work arrangement was disputed, the trial court did not err in refusing to hold as a matter of law that Constant was Stenvik's employer. The trial court did not err in failing to instruct the jury on the common law duty of an employer to an employee and did not err in instructing the jury to discount future damages to present value.

**Affirmed.**