**J.M., Respondent,**

v.

**MINNESOTA DISTRICT COUNCIL OF the ASSEMBLIES OF GOD, Appellant, Respondent,**

**St. James Assembly of God Church, Respondent, Appellant,**

**Jerald Dvorscak, Defendant.**

Nos. C4–02–1533, CX–02–1584.

Court of Appeals of Minnesota.

March 25, 2003.

Teresa K. Patton, Sprenger & Lang, P.L.L.C., and Jeffrey M. Ellis, Jeffrey M. Ellis, P.L.L.C., Minneapolis, for respondent J.M.

Patrick T. Tierney, Collins, Buckley, Sauntry & Haugh, P.L.L.P., St. Paul, for Minnesota District Council of the Assemblies of God.

Richard P. Mahoney, Victor Lund, Mahoney, Dougherty and Mahoney, P.A., Minneapolis, for St. James Assembly of God Church.

Considered and decided by LANSING, Presiding Judge, KLAPHAKE, Judge, and STONEBURNER, Judge.

## OPINION

STONEBURNER, Judge.

Appellants St. James Assembly of God Church and the Minnesota District Council of the Assemblies of God challenge denial of their motions for summary judgment, contending that the religious freedom clauses of the federal and state constitutions deprive the district court of subject-matter jurisdiction over claims asserted by respondent J.M. for the hiring and retention of a pastor who engaged in a sexual relationship with her during counseling. Because court examination of the council's and the church's hiring decisions are precluded by the First Amendment, we reverse in part and affirm in part.

## FACTS

Based on his degree from a church-owned Bible college, references, and a test to determine that his doctrinal position was consistent with the doctrinal position of the Assemblies of God Church, Jerald Dvorscak was licensed to be a pastor by appellant Minnesota District Council of the Assemblies of God (the council). Dvorscak's first employment was as an associate pastor in Ohio. During Dvorscak's employment there, a young woman complained to the senior pastor that Dvorscak had inappropriately touched her. The senior pastor advised Dvorscak to have no further contact with the woman. No other church officials were involved and no further action was taken.

Dvorscak later began looking for a position as a senior pastor. The council recommended Dvorscak as a candidate for senior pastor to fill an opening with one of its affiliates, appellant St. James Assembly of God Church (the church). Dvorscak went through the church's selection process and was hired by the church as senior pastor. The church did not make any inquiries of Dvorscak's former employer.

Respondent J.M. and her family joined the church about two years after Dvorscak was hired. When J.M.'s husband was diagnosed with a life-threatening illness, J.M. became more actively involved in the church and J.M. states that she sought counseling from Dvorscak. J.M. and Dvorscak began to spend large amounts of time together and became involved in a clandestine sexual relationship. A member of the church's Board of Deacons spoke with Dvorscak once about the poor impression created by his attention to J.M.

About one month later, J.M. revealed the nature of her relationship with Dvorscak to a visiting pastor, who disclosed the relationship to board members. A board member contacted the council. Dvorscak was confronted and admitted the relationship. The church requested and received his resignation, and the council revoked his credentials.

J.M. sued Dvorscak, the church, and the council in an eleven-count complaint. J.M. settled her claims against Dvorscak. J.M. dismissed some of her claims against the council and the church. After various pre-trial motions, the only claims remaining against the church were negligent hiring, negligent retention, and employer liability under Minn.Stat. ch. 148A, and the only claims remaining against the council were negligent hiring and liability under Minn. Stat. ch. 148A. The church and the council moved for summary judgment on these remaining claims, asserting that the district court is barred from considering these claims by constitutional protections provided by the United States and Minnesota constitutions. The district court denied summary judgment.[1] The church's

1. The district court specifically concluded that it has jurisdiction to consider the statuto-

and the council's separate appeals have been consolidated.

## ISSUES

1. Does the district court have subject-matter jurisdiction over claims against appellant church entities related to the hiring of a pastor?

2. Does the district court have subject-matter jurisdiction over claims against appellants under Minn.Stat. § 148A.03 that are not related to the hiring of pastor?

3. Does the district court have subject-matter jurisdiction over claims against appellants for negligent retention of a pastor who had a sexual relationship with a parishioner to whom he was providing counseling?

## ANALYSIS

■ Generally, an interlocutory appeal may not be taken from a denial of summary judgment, but an issue relating to subject-matter jurisdiction is appealable immediately. *McGowan v. Our Savior's Lutheran Church*, 527 N.W.2d 830, 832–33 (Minn.1995). Issues of subject-matter jurisdiction are reviewed de novo. *Odenthal v. Minn. Conference of Seventh–Day Adventists*, 649 N.W.2d 426, 434 (Minn.2002) (*Odenthal I*). The state and federal constitutions limit a secular court's resolution of disputes involving religious institutions. *Id.*

### I. Hiring claims

#### a. The First Amendment

The First Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that "[C]ongress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The First Amendment applies to judicial power. *Odenthal I*, 649 N.W.2d at 435. Appellants assert that a court's examination of a church's decision to hire a pastor, whether pursuant to common law or statute, violates both the Establishment Clause and the Free Exercise Clause of the First Amendment.

#### 1. The Establishment Clause

■ Government action is not prohibited by the Establishment Clause if it (a) has a secular purpose; (b) neither inhibits nor advances religion as its primary effect; and (c) does not create excessive entanglement between church and state. *Lemon v. Kurtzman*, 403 U.S. 602, 612–613, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). At issue in this case is the entanglement prong, under which the court "may not inquire into or review the internal decision making or governance of a religious institution." *Odenthal I*, 649 N.W.2d at 434. (citing *Jones v. Wolf*, 443 U.S. 595, 602, 99 S.Ct. 3020, 3025, 61 L.Ed.2d 775 (1979)).

J.M. alleges that the council and the church are liable for Dvorscak's hiring under the common law negligence and under Minn.Stat. ch. 148A.

■ Negligent hiring claims are predicated on the negligence of an employer in placing a person with known propensities, or propensities which should have been discovered by reasonable investigation, in an employment po-

ry claims and declined to address the common-law claims on the basis that it had not granted appellants permission to amend their pleadings to assert lack of subject-matter jurisdiction over the common-law claims. But lack of subject-matter jurisdiction can be raised at any time. Minn. R. Civ. P. 12.08(c). Because the issue was fully briefed and argued below, in the interest of judicial economy, we address the merits of this claim on appeal.

sition which, because of the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others. Liability for negligent hiring is determined by the totality of the circumstances surrounding the hiring and whether the employer exercised reasonable care.

*L.M. v. Karlson,* 646 N.W.2d 537, 544 (Minn.App.2002) (citations and quotations omitted).

Chapter 148A of the Minnesota Statutes imposes liability on the employer of a member of the clergy who performs or purports to perform psychotherapy and who sexually exploits a patient if

> [t]he employer fails or refuses to make inquiries of an employer or former employer whose name and address have been disclosed to the employer and who employed the psychotherapist as a psychotherapist within the last five years, concerning the occurrence of sexual contacts by the psychotherapist with patients or former patients.

Minn.Stat. § 148A.03(a)(2) (2002); *see* Minn.Stat. § 148A.01 subd. 5 (defining psychotherapist to include member of clergy who performs or purports to perform psychotherapy). While this section does not explicitly impose liability for hiring, to the extent that the language may be construed to impose liability for hiring a pastor without making such an inquiry, the church's and council's involvement in Dvorscak's hiring is implicated. Appellants assert that a court's examination of J.M.'s common law and statutory claims related to Dvorscak's hiring creates excessive entanglement between church and state.

■ The Establishment Clause is not implicated where neutral principles of law, developed and applied without particular regard to religious doctrines, establish the applicable standard of care. *See Odenthal I,* 649 N.W.2d at 436. In this case, even though neutral principles of law can be applied to determine whether a member of the clergy is performing psychotherapy (discussed below) and neutral principles of law can be applied to determine what the church and the council knew or should have known about a pastor's employment history at the time of hiring, appellants argue that J.M.'s hiring-related claims implicate core, fundamental church doctrines governing identification of individuals "called" to the ministry. We agree.

A determination of whether the statutorily required inquiries were made of a pastor-candidate's former employers does not involve church doctrine, but a determination of how that information should be used in a hiring decision would force the court into an examination of church doctrine governing who is qualified to be a pastor.

> When claims involve "core" questions of church discipline and internal governance, the Supreme Court has acknowledged that the inevitable danger of governmental entanglement precludes judicial review.
>
> \* \* \* \*
>
> [Appointment and discharge] claims are fundamentally connected to issues of church doctrine and governance \* \* \*.

*Black v. Snyder,* 471 N.W.2d 715, 720 (Minn.App.1991) (holding that prohibition against litigating matters at core of church's religious practice required dismissal of assistant-pastor's discharge-related claims), *review denied* (Minn. Aug. 29, 1991). Court examination of J.M.'s common-law and statutory hiring-related claims require entanglement between church and state and are precluded by the Establishment Clause of the First Amendment. Therefore, we conclude that the district court does not have subject-matter jurisdiction over J.M.'s claims involving

Dvorscak's hiring, whether based on common law or statute. The district court erred by denying appellants' motions for summary judgment dismissing J.M.'s hiring-related claims.

Because the Establishment Clause precludes jurisdiction over J.M.'s hiring-related claims, we do not reach appellants' arguments on these claims based on the Free Exercise Clause and the state constitution.

## II. Statutory claims not related to hiring

J.M. alleges that the church and the council are liable as Dvorscak's employers under Minn.Stat. § 148A.03 for actions unrelated to hiring. The statute imposes liability on the employer of a member of the clergy who performs or purports to perform psychotherapy and who sexually exploits a patient if:

(1) the employer fails or refuses to take reasonable action when the employer knows or has reason to know that the psychotherapist engaged in sexual contact with the plaintiff or any other patient or former patient of the psychotherapist; or

(2) the employer fails or refuses to make inquiries of an employer or former employer, whose name and address have been disclosed to the employer and who employed the psychotherapist as a psychotherapist within the last five years, concerning the occurrence of sexual contacts by the psychotherapist with patients or former patients of the psychotherapist.

Minn.Stat. § 148A.03(a).

### a. Determination of whether the council was an employer as defined in statute

 The council denies that it was Dvorscak's employer and asserts that it therefore cannot be liable to J.M. under Minn.Stat. § 148A.03. Furthermore, the council argues that the district court lacks jurisdiction to examine whether the council was Dvorscak's employer for purposes of liability under Minn.Stat. § 148A.03 because such an examination would involve a challenge to the internal rules and doctrines of the Assemblies of God Church. The council argues that the First and Fourteenth Amendments that permit hierarchical religious organizations to establish their own rules and regulations for internal discipline and government and require that civil courts accept their decisions as binding prohibit such a challenge. *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 720, 96 S.Ct. 2372, 2385–6, 49 L.Ed.2d 151 (1976). The council then refers to the Articles of Incorporation and bylaws of the church to argue that, as a matter of law, the council is not Dvorscak's employer. The council, however, has not moved for summary judgment on the issue of whether or not it is Dvorscak's employer and that issue is not before us: we only examine whether the court has jurisdiction to make this determination. We conclude that the court has such jurisdiction. There are five neutral factors commonly used to determine whether an employment relationship exists:

(1) the right to control the means and manner of performance; (2) the mode of payment; (3) furnishing of materials and tools; (4) control of premises where work is performed; and (5) right of the employer to hire and discharge.

*Stenvik v. Constant,* 502 N.W.2d 416, 420 (Minn.App.1993), *review denied* (Minn. Aug. 24, 1993).[2] Application of these neutral principles to the hierarchical structure of the church as set out in church docu-

---

**2.** The right to control is the most significant factor. The council notes that J.M. dismissed

ments does not constitute a challenge to the church documents. The court is bound by the structure established by the documents. Determination of whether the structure constitutes an employer-employee relationship for purposes of chapter 148A of the Minnesota Statutes is not a doctrinal matter, so there is no First Amendment barrier to resolution by civil courts. *See Piletich v. Deretich,* 328 N.W.2d 696, 700 (Minn.1982) (holding that a matter of property ownership can be constitutionally examined by court applying neutral principles of law to terms of church documents).

Because a determination of whether an employer-employee relationship exists between the council and Dvorscak can be accomplished by application of neutral principles to undisputed facts, we conclude that the district court has subject-matter jurisdiction and did not err by denying the council's motion for summary judgment on J.M.'s claims against it for non-hiring related aspects of Minn.Stat. § 148A.03.

**b. Liability of church as employer under chapter 148A**

The church admits that it was Dvorscak's employer, but argues that chapter 148A of the Minnesota Statutes cannot constitutionally be applied to it. We disagree.

 The church first argues that a determination of whether Dvorscak was acting as a psychotherapist would involve excessive entanglement. But the statute provides neutral standards to guide the determination. A psychotherapist is defined as a "member of the clergy * * * whether or not licensed by the state, who performs or purports to perform psycho-

therapy." Minn.Stat. § 148A.01, subd. 5. Psychotherapy is defined as "the professional treatment, assessment or counseling of a mental or emotional illness, symptom, or condition." Minn.Stat. § 148A.01, subd. 6. In *Odenthal I,* the Minnesota Supreme Court held that a determination of whether a minister was providing services equivalent to psychotherapy, such that he was an unlicensed mental health practitioner for purposes of chapter 148B of the Minnesota Statutes, does not excessively entangle the court in religion. *Odenthal I,* 649 N.W.2d at 438.

We note that the statutory definition of mental health services is neutral on its face—it describes "assessment, treatment, or counseling" without regard to whether religious or spiritual principles are involved. While the counseling or treatment relationship may arise in many contexts, including the context of a clergy and church member, the statute provides a neutral and secular description of the purpose and character of the counseling relationship.

\* \* \* \*

[The minister] fails to identify how determining whether a person is providing "assessment, treatment, or counseling" for the conditions described in the statute requires any inquiry into the religious aspect of the relationship. Therefore, we see no need to parse out secular and religious counseling to apply this definition, and its application does not "alter or impinge upon the religious character" of the relationship. \* \* \* Therefore, applying the statutory definition of mental health services does not excessively entangle the courts in religion.

---

her claims against the council for negligent retention and negligent supervision because the council did not have supervisory authority over Dvorscak. By conferring jurisdiction,

we do not preclude a determination that, as a matter of law, the council is not Dvorscak's employer.

*Id.* (citations omitted). Based on *Odenthal I,* we conclude that the determination of whether Dvorscak was providing psychotherapy does not involve excessive entanglement of the court and religion.

 The church next argues that application of the statute "involves the state telling the church how its ministers shall conduct their counseling sessions with parishioners." But the application of the statute to the church does not create such a danger. Minn.Stat. § 148A.03 neither prescribes any particular behavior on the part of those providing psychotherapy, nor does the statute require the courts to examine the merits or methods of the psychotherapy provided. The statute imposes liability on an employer for the employer's acts or failure to act, to the extent it was a proximate and actual cause of any injuries sustained. Minn.Stat. § 148A.03. The argument that application of the statute involves the state dictating to the church how ministers conduct counseling sessions with parishioners is without merit.

 The church further argues that application of the statute would amount to a substitution of the state's view of reasonable conduct for the church's view of reasonable conduct, amounting to an interference with church governance. But we have previously held that a church-employer can be sued for failing to take reasonable actions to prevent sexual harassment under the Minnesota Human Rights Act, without violating the First Amendment or the state constitution. *Black,* 471 N.W.2d at 721 (holding that even if enforcement of harassment prohibitions would incidentally burden religious activity or belief, claim can be asserted because state's interest in eradicating sexual harassment in the workplace is compelling.) The Human Rights Act imposes a duty on an employer to take prompt and appropriate action when it knows or should know of conduct in the workplace amounting to sexual harassment. *Continental Can Co. v. State,* 297 N.W.2d 241 (Minn.1980). We do not see any difference between the duty to take reasonable action imposed by the Human Rights Act and the duty imposed by Minn. Stat. § 148A.03. And

> [g]iven the frequently vulnerable nature of those receiving mental health services, the state's interest in their safety and well-being is compelling.

*Odenthal I,* 649 N.W.2d at 443. Based on the reasoning set out in *Black,* we conclude that Minn.Stat. § 148A.03 can be applied constitutionally to the church. The district court did not err by denying summary judgment on J.M.'s claims for the church's liability under Minn.Stat. § 148A.

## III. Church's liability for negligent retention

 Generally, an employer has the duty "to refrain from retaining employees with known dangerous proclivities." *Yunker v. Honeywell, Inc.,* 496 N.W.2d 419, 423 (Minn.App.1993), *review denied* (Minn. Apr. 20, 1993). An employer may be liable for negligent retention when

> the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigating, discharge, or reassignment.

*Id.* at 423 (citation omitted). Under this cause of action, an employer's liability is not dependent on whether the employee acted within the scope of employment. *Id.* at 422.

The standard used to determine negligent retention is based on neutral principles of law. The court need not investigate the role of pastor within church hierarchy or the nature of Dvorscak's employment with the church in order to resolve a claim of negligent retention. The unfitness alleged is the secular act

of sexually violating a parishioner, not any alleged unfitness that relates to Dvorscak's duties as a pastor. The court only need evaluate what the church knew or should have known about Dvorscak's propensity to sexually violate parishioners with whom he was counseling, and, if there was such knowledge, whether the church's actions were reasonable considering the problem. As with determination of J.M.'s claims under chapter 148A of the Minnesota Statutes, evaluation of the negligent retention claim can be accomplished using neutral standards, without regard to religious doctrines. *See Odenthal v. Minn. Conference of Seventh–Day Adventists,* 657 N.W.2d 569 (Minn.App. 2003) (*Odenthal II*) (holding that claims against church employer for negligent retention of a pastor as a secular counselor, who allegedly engaged in negligent secular counseling, can be resolved through application of neutral principles of law and without violating the federal or state constitutions), *petition for review filed* (Minn. Feb. 26, 2003). The district court did not err by denying the church's motion for summary judgment on J.M.'s claims for negligent retention.

### DECISION

The district court's denial of summary judgment based on lack of subject-matter jurisdiction over J.M.'s claims against the church and the council for non-hiring related claims under Minn.Stat. § 148A.03 and J.M.'s negligent retention claim against the church is affirmed. The district court's denial of summary judgment based on lack of subject-matter jurisdiction for hiring-related claims against the church and the council is reversed.

**Affirmed in part and reversed in part.**