**In re the Marriage of Nancy DARCY, Petitioner, Respondent,**

v.

**John M. DARCY, Appellant.**

**Nos. CX–89–1703, C9–89–2213.**

Court of Appeals of Minnesota.

May 15, 1990.

Becky Skinner Toevs and Shirley Qual, Lambert & Boeder, Wayzata, for respondent.

John A. Warchol, Warchol, Berndt & Hajek, Minneapolis, for appellant.

Considered and decided by HUSPENI, P.J., and SCHUMACHER and LESLIE, JJ.

## OPINION

DAVID R. LESLIE, Judge *.

Appellant argues that the trial court's denial of his motion to reduce his child support obligation and its granting of respondent's request for child support arrearages were abuses of discretion and were based on findings that were extraneous to and/or inconsistent with the record. We reverse and remand.

## FACTS

The marriage of appellant John Darcy and respondent Nancy Darcy was dissolved pursuant to a stipulated judgment and decree approved by the court in September, 1985. At that time appellant was a general manager of a large corporation and had gross annual income exceeding $300,000.

The judgment and decree granted respondent custody of the two minor children and set appellant's child support obligation at $1,000 per month per child. It also awarded appellant a property settlement including a $12,000 "housing allowance" from his employer and two non-income-producing tax shelters. Since the dissolution, appellant has remarried and now has a son from that marriage.

In February, 1987, appellant lost his job as a result of a corporate take-over. His severance package included compensation and benefits through the end of 1987. Appellant's gross monthly income for 1987 was approximately $14,000; his net monthly income was approximately $10,000. Additionally, after being terminated, appellant received monies including a retirement distribution from his former employer of $11,-000 and a 1986 bonus of $38,000. Appellant's total 1987 income was approximately $238,000. During 1987 appellant made timely child support payments.

After termination, appellant sought employment by contacting "executive recruiters" as well as the upper level management of various companies. Appellant testified that by February, 1989, he had sent out 1,500–2,000 letters and résumés. Appellant stated that he did not restrict his employment search by income, position or geographical location and that while he had several interviews, most were "informational and not for a specific position." Appellant also investigated the possibility of purchasing a smaller company and creating a management position for himself. Having researched "more than a hundred companies," he made offers on four.[1] At the time of his testimony, this tactic had not produced a job for him.

Also during 1987 appellant made tax shelter contributions exceeding $33,000 and paid off premarital loans of his present wife of over $46,000.

In February, 1988, appellant negotiated with his former employer and received an additional $29,000 net income as an extension of his severance pay. Appellant then paid all arrearages which had accrued on his child support obligation since an unauthorized reduction thereof earlier that year, and as of March, 1988, was current in his child support obligations. In April and May, 1988, appellant again reduced his child support payments to $500 and $200, respectively. In May he also moved for a reduction of that obligation. Respondent requested arrearages and attorney fees. The parties agree that by the time of their motions, child support arrearages were approximately $3,000.

During early 1988, appellant sold his car for a profit of about $1,100. In June, 1988, appellant and his present wife sold their home and the proceeds were conveyed to each of them in separate checks proportional to their contributions to the down payment. After the sale, appellant and his wife moved in with appellant's in-laws in Michigan, who provided appellant with an office from which to run his job search. Appellant testified that upon moving to Michigan, he used his share of the home's proceeds ($45,000) to meet expenses of his second family. He also stated that he is not sure what his present wife did with her

---

\* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

**1.** Appellant testified that while he had no money to make the offers, with the help of certain investment banking contacts he had been able to arrange financing for possible purchase.

share of the home's proceeds ($101,000) as it went into a separate account and she manages the family's finances.

A hearing on the motions originally scheduled for June 3, 1988, was continued four times at respondent's request so that respondent could retain new counsel and conduct discovery. An evidentiary hearing was ultimately conducted at respondent's request and was completed March 16, 1989. Written arguments were filed by the parties and on August 18, 1989, the trial court denied appellant's motion for reduced child support and granted respondent's motion for arrearages and attorney fees. Judgment denying appellant's child support motion and judgment granting respondent arrearages were entered and appealed separately and consolidated by this court upon respondent's motion.

## ISSUES

1. Did the trial court err in considering appellant's 1987 financial circumstances to support its child support determinations?

2. Were the trial court's findings clearly erroneous?

3. Was the trial court's refusal to forgive arrearages an abuse of discretion?

## ANALYSIS

The supreme court has stated,

the decision to modify a child support order lies in the broad and sound discretion of the trial court, and an appellate court will reverse for an abuse of that discretion only where it finds a "clearly erroneous conclusion that is against logic and the facts on the record."

*Moylan v. Moylan,* 384 N.W.2d 859, 864 (Minn.1986) (quoting *Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn.1984)). "[The trial court's] discretion, however, must be exercised within the limits set out by the legislature." *Moylan,* 384 N.W.2d at 864.

By statute,

The terms of a decree respecting * * * support may be modified upon a showing of * * * substantially increased or decreased earnings of a party; * * * which makes the terms [of the original award]

unreasonable and unfair. * * * On a motion for modification of support, the court shall take into consideration the needs of the children and shall not consider the financial circumstances of each party's spouse, if any.

Minn.Stat. § 518.64, subd. 2 (1988). Under this statute

the moving party must show that the support terms are unreasonable and unfair because either (a) the earnings of a parent have substantially increased or decreased, *or* (b) the need of a party has substantially increased or decreased, *and* the court shall further consider the needs of the children * * *.

*Heaton v. Heaton,* 329 N.W.2d 553, 554 (Minn.1983) (emphasis in original).

Here, the trial court and respondent agree that

[Appellant's] income has decreased substantially as a result of the nonvoluntary termination of his employment in February 1987 and his continuous unemployment since that time.

However, the trial court also found

that [the] change in [appellant's] circumstances does not render the existing order for child support unreasonable and unfair considering the nature of his job search efforts and considering [appellant's] overall financial situation.

### I.

By statute "support money" is "an award in a dissolution * * * for the care, support and education of any child of the marriage," Minn.Stat. § 518.54, subd. 4 (1988).

In addition to the child support guidelines, the court shall take into consideration the following factors in * * * modifying child support:

(1) all earnings, income, and resources of the parents, including real and personal property;

Minn.Stat. § 518.551, subd. 5(b) (1988). The exact parameters of what may or may not be used to satisfy or set a support obligation have not been fully determined.

Here, noting that no arrearages accrued in 1987, appellant argues that:

> By emphasizing appellant's *1987* financial picture, the trial court has grossly distorted appellant's financial picture at the time he brought his motion for reduction in 1988 and at the time of the hearing on that motion in 1989.

(Emphasis in original.) We do not believe that the issue is that simply resolved.

■ In evaluating a motion for modification of support, a primary consideration is the needs of the children. *See* Minn.Stat. §§ 518.551, subd. 5(b)(2); 518.64, subd. 2 (1988). We cannot read appellant's argument to mean that a child support obligor has no duty to consider his future child support obligations in his budgeting. To do so would encourage obligors anticipating future financial hardship to spend their money and later petition the court for a decreased child support obligation if the expected hardship against which they could have prepared actually occurs. This conduct would be contrary to the strong public policy requiring support of one's own children, *see, e.g.,* Minn.R.Fam.Ct. 7.01(e) (1988) ("it is the responsibility of a person with seasonal employment to budget income so that [child support] payments are made regularly"), the fact that "payment of [child] support * * * takes priority over payment of debts and other obligations," Minn.R.Fam.Ct. 7.01(c) (1988), and that a parent has an obligation to

> [make] a reasonable effort by means of his own selection to conform to [a support] order well within his inherent but unexercised capacities.

*Giesner v. Giesner,* 319 N.W.2d 718, 719–20 (Minn.1982) (quoting *Hopp v. Hopp,* 279 Minn. 170, 176, 156 N.W.2d 212, 217 (1968)) (other citation omitted). On the other hand, we are also concerned about the extreme inequity which would result from holding an obligor liable for the use of monies or opportunities in a manner with which the custodial parent does not agree. This would be the case especially where the accounting is demanded months or even, as here, years, after the uses at issue. In this

regard, we are particularly aware of the delays occasioned by respondent.

■ Generally,

> [a]lthough dissolution is a statutory action and the authority of the trial court is limited to that provided for by statute, the district courts are guided by equitable principles in determining the rights and liabilities of the parties upon a dissolution of the marriage relationship.

*DeLa Rosa v. DeLa Rosa,* 309 N.W.2d 755, 757–58 (Minn.1981) (citations omitted). Under the instant circumstances, we cannot say that the very substantial income appellant had through March, 1988, was completely irrelevant to his ability to pay child support in April, 1988. However, it is equally clear that appellant's prior income cannot be considered in a vacuum when evaluating appellant's post-March, 1988 ability to pay child support. Therefore, we conclude that while it was not error for the trial court to consider appellant's prior income, equity demands that consideration of prior income be discounted to the extent demanded by the totality of the circumstances. Further, to facilitate review of such unusual situations, the trial court's findings must manifest specific recognition of the fact that it is appellant's past income which is being considered and state the reasons for the degree of the prior consideration.

■ With appellant's ability to meet his child support obligation significantly exaggerated by the trial court, and without a firm finding regarding either respondent's or the children's expenses, we must remand the reduction of appellant's child support obligation. Additionally, on remand, the existence of and the circumstances surrounding the stipulation to the child support obligation are factors to be considered by the trial court. *See Martin v. Martin,* 401 N.W.2d 107, 110 (Minn.App.1987). Specifically,

> an evaluation of the fairness of the original decree requires consideration of both parents' financial resources and *their relative contributions to the children's support.*

*Winter v. Winter,* 375 N.W.2d 76, 80 (Minn.App.1985), *pet. for rev. denied* (Minn. Dec. 30, 1985) (emphasis added). This court has stated:

> In determining a child support obligation, the court must consider the financial resources of *both parents* and the standard of living the child would have enjoyed if the parents remained married.

*Resch v. Resch,* 381 N.W.2d 460, 462 (Minn. App.1986); *see also* Minn.Stat. § 518.551, subd. 5(b)(1), (3). Under the above authority, it is clear that the trial court should consider the extent to which the parties should share the support of their children. Specifically, the parties may wish to reconsider the expenditures for private schooling, as those expenditures were originally made feasible by appellant's significant annual income, and the extent to which the children should share the sacrifice occasioned by the parties' circumstances. While the totality of the circumstances on this record suggests that a monthly child support obligation of $2,000 may be excessive, it is also apparent that the trial court's wide discretion might support a conclusion that appellant's unilateral reduction of his child support payments left respondent with insufficient monies for raising the children.

## II.

Appellant challenges certain trial court findings.

### A. *Appellant's Job Search*

■ The trial court found:

> [appellant] did not indicate that he had worked through any employment search agencies to locate likely job prospects * * * [he] did not indicate [that] he is conducting any concurrent continuing job search. He apparently has not sought unemployment compensation. He did not present evidence that he has searched for employment at less than a high managerial position.

We disagree with the trial court's determination that appellant's job search was deficient or unsatisfactory.

Initially, the trial court did not address appellant's numerous contacts with executive recruiters. Additionally, appellant stated that by the time of his testimony,

> I had already contacted any company that I thought that I would be even remotely qualified for within approximately the first six to eight months [after termination].
>
> Naturally, I contacted those that I thought I might be most qualified for early on and then broadened the pattern as time went on. So within the last six months, I have continued to keep up contacts with any company that continues to show some promise, of which there are very, very few.

With 1,500–2,000 resumes circulating, appellant's statements regarding his employment search are credible, and we see that search to be in good faith. Further, respondent also recognized the legitimacy of appellant's job loss and the efforts he has expended to find new employment. Finally, regarding the trial court's determination that appellant failed to apply for any job of less than a high managerial position, appellant testified that when he was actually interviewed by a prospective employer, his prior income was used to set his entry level at the new corporation and that this was consistent with the method he had used when he hired people.

### B. *Appellant's Income, Property and Resources*

1. Appellant's 1987 Income:

The trial court's findings regarding appellant's "earnings, income and resources," *see* Minn.Stat. § 518.551, subd. 5(b)(1), overstate the value thereof by at least $74,900.

■ For the period when appellant had income, the trial court considered his gross monthly income ($14,000) rather than his net income ($10,000). "The child support guidelines require the use of a net income figure * * *." *Larson v. Larson,* 370 N.W.2d 40, 43 (Minn.App.1985). While we recognize that maximum child support is reached at a $4,000 per month net income level for the obligor, *see* Minn.Stat.

§ 518.551, subd. 5(a) (1988), and that relative to the guidelines the net/gross distinction is not determinative here, we also recognize that this case does not involve guideline support and that by considering appellant's gross rather than his net income, the trial court artificially inflated appellant's income by $56,000 for the relevant period (February 1987—March 1988).

2. Appellant's Marital Property Settlement:

Appellant challenges the trial court's valuation of appellant's marital property settlement at $102,292, arguing that $14,000 belonging to his mother was included and $5,000 omitted. We agree that appellant's marital property settlement was thus overvalued by $9,000.[2]

3. Profit on Sale of Car:

The parties agree that the trial court erred in its determination that appellant received $11,000 upon the sale of his car, and that the correct figure is $1,100.

C. *Expenses*

1. Job Search Expenses and Living Expenses:

Appellant argues that the trial court arbitrarily reduced his job search expenses from $822 a month to $300 a month and erred in failing to recognize as an expense his obligations to pay his attorney fees,[3] and also erred in accepting without question respondent's stated living expenses. While we recognize the trial court's ability to evaluate the credibility of the witnesses regarding their expenses, *see* Minn.R.Civ.P. 52.01, we note an inconsistency in the trial court's statement of the children's expenses. When evaluating the total month-

ly expenses for respondent and the children, the trial court states "[respondent's] reasonable expenses total $1,688.50 and those for [the children] total *$2,427.27*" (emphasis added). The trial court's next finding addresses the needs of the children. It states: "[the] reasonable total monthly expenses for [the children] are *$2,327.30*" (emphasis added).

We also note that the trial court failed to address the fluctuations in respondent's claimed expenses. Specifically, the judgment and decree found the monthly expenses for respondent and the children to be $4,965. Respondent's affidavit, filed with her October 1988 cross-motion, indicated that monthly expenses for herself and the children were $3,020. However, an exhibit introduced to the trial court in March 1989 at the hearing listed her monthly expenses as $4,065.80. Although the discrepancy between the affidavit and the exhibit was brought out at the hearing, the trial court found her monthly expenses to be $4,115.77 and failed to address the October affidavit.

2. Housing Expenses:

■ Appellant alleges that the trial court failed to include housing in its consideration of appellant's expenses. Appellant and his wife, however, live with appellant's in-laws and pay them $100 per month. The trial court's expense findings include a $50 "contribution" to appellant's in-law's household. The trial court recognized appellant's monthly housing expenses to the extent they are incurred. To do otherwise would be inappropriate.

III.

"Forgiveness of [child support] arrearages is a retroactive modification of child

---

2. Appellant's characterization of his property settlement also subtracts the $12,000 housing allowance awarded to him in the dissolution. Appellant's arguments on this issue are without merit. He stipulated to the original judgment and decree, did not appeal it, and is not now able to contest that aspect of the award. *See* Minn.Stat. § 518.64, subd. 2 (1988).

3. Appellant's brief also addressed the appropriateness of the trial court's award of attorney

fees to respondent. We do not address this issue because it does not appear that judgment has been entered regarding this aspect of the trial court's ruling. *See* Minn.R.Civ.App.P. 103.-03. Additionally, we note that this court's December 19, 1989 order consolidating the appeals in this case specifically stated "Appellant is cautioned * * * to confine his arguments on appeal to issues over which this court has jurisdiction."

support," *Tinsley v. Tinsley,* 427 N.W.2d 739, 741 (Minn.App.1988), "[which] is governed by Minn.Stat. § 518.64, subd. 2 * * *." *Arora v. Arora,* 351 N.W.2d 668, 670 (Minn.App.1984), *pet. for rev. denied* (Minn. Oct. 11, 1984). "The moving party has the burden of proof," *Bledsoe v. Bledsoe,* 344 N.W.2d 892, 895 (Minn.App.1984) and "[t]he trial court's power to forgive arrearages should be exercised cautiously upon satisfactory evidence." *Id.* (citation omitted). Further, by statute,

> A modification of support * * * may be made retroactive only with respect to any period during which the petitioning party has pending a motion for modification but only from the date of service of notice of the motion on the responding party.

Minn.Stat. § 518.64, subd. 2 (Supp.1989). Finally,

> [W]hen forgiving past due child support, where the interests of children are paramount, the court should be even more cautious [than with forgiveness of past due maintenance].

*Bledsoe,* 344 N.W.2d at 895 (citation omitted).

■ Because the trial court's findings were insufficient to support its modification determination and because modification of child support and forgiveness of arrearages are governed by the same statute, we also remand the arrearages issue. In doing so, however, we make the following observations.

A. The parties' stipulated dissolution decree:

1. The stipulated child support was implicitly based on appellant's then substantial annual income.

2. The decree specifically states: "child support herein is in view of the fact that children are attending a private school."

3. The decree quotes Minn.R.Fam.Ct. 7.01(c)–(e) which states

> (c) The payment of child support * * * takes priority over the payment of other debts and obligations.
> (d) A party who remarries after dissolution and accepts additional obligations of support does so with full

knowledge of his or her prior obligation under this proceeding.

> (e) Child support * * * is based on annual income * * *.

B. The facts of this case:

1. The record presently indicates that appellant lost his income in April, 1988.

2. One of the children no longer attends a private school.

3. Appellant's various debts are to be considered by the trial court only if "the court determines that the debt was reasonably incurred for necessary support of [the children] or for the necessary generation of income." Minn.Stat. § 518.551, subd. 5(c)(2); *see generally* Minn.Stat. § 518.551, subd. 5(c).

On remand the trial court should address the above circumstances regarding whether appellant's arrearages should be forgiven and the extent of any forgiveness deemed appropriate.

### DECISION

Consideration of a child support obligor's prior income may, in certain cases, be appropriate, but consideration of that income must be discounted to the extent demanded by the totality of the circumstances. Further, the trial court's findings must specifically address the reasons for both the consideration and the reasons for the degree of the prior income's consideration. Here, because several of the trial court's findings do not comport with the record, we remand the issues of modification of child support and forgiveness of arrearages.

Reversed and remanded.

HUSPENI, J., dissents with opinion.

HUSPENI, Judge (dissenting).

I respectfully dissent and would affirm the trial court. I conclude that its decisions both as to current child support and as to arrears are supported by adequate findings and are within its broad discretion.

### I.

With regard to current child support, the trial court and this court recognized that

appellant experienced a substantial change in circumstances since entry of the dissolution decree. I agree. However, that substantial change is but one prong of the test set forth in Minn.Stat. § 518.64, subd. 2. The second prong of this statute requires a determination that the substantial change in circumstances has rendered the terms of the present order unreasonable and unfair. Here, the trial court's explicit refusal to draw that conclusion is supported by the record and by adequate findings and should be affirmed.

While I share the majority's disagreement "with the trial court's determination that appellant's job search was deficient or unsatisfactory," that disagreement should not require a remand. The trial court also rested its conclusion that the current support order was neither unreasonable nor unfair on consideration of "[appellant's] overall financial situation." I submit that the trial court acted within its broad discretion in considering appellant's overall financial situation at the evidentiary hearing ending in March, 1989.

Appellant lost his job in February, 1987, but received compensation and benefits of approximately $238,000 throughout the remainder of that year. Further, when his severance pay was extended through March, 1988, he received an additional $29,-000. Appellant was current in his child support as of March, 1988. In 1987, with knowledge of his unemployment status, appellant made tax shelter payments of $33,-000 and repaid premarital debts of his second wife of $46,000. He unilaterally reduced his child support payments from the stipulated $2,000 per month to $500 per month in April, 1988, and to $200 per month in May, 1988. In June, 1988, he received his $45,000 share of the sale of a home of his current marriage. He and his current wife live with her parents and pay a nominal $100 per month to them. The trial court's finding of fact in regard to appellant's financial activities contains the following:

> In March of 1988, the last month for which he paid child support in the amount ordered, [appellant] paid $15,780 into [a tax shelter]. In October 1988,

[appellant] paid $16,000 into [another tax shelter]. He also contributed an additional $7,000 to a limited charge account. It is clear that [appellant] has used assets from his first marriage for joint expenses of his new family unit * * * when those funds could have been used to pay his child support obligation. [Appellant] claims his use of these funds was pursuant to agreement with his current wife and that her parents would supply room and board but there is no written agreement concerning such a distribution.

> [Appellant's] obligation to support his children's needs is primary. The fact that [appellant] has chosen to use his resources to invest in tax shelters that cost $2,666 per month rather than investing in interest-producing accounts, to pay premarital debts of his current wife and to make other expenditures that enable him to enjoy a comfortable standard of living, is not an appropriate basis for finding that a reduction in child support is required.

The trial court's conclusion that despite appellant's substantial change in circumstances the terms of the current stipulated support order were not unreasonable and unfair has adequate support in the record and should be affirmed.

## II.

I would also affirm the trial court's determination regarding an award of support arrearages. Minn.Stat. § 518.64, subd. 2 provides:

> a modification of support * * * may be made retroactive only with respect to any period during which the petitioning party has pending a motion for modification.

A fair reading of this section indicates that even if a trial court grants a motion to modify support prospectively, it has discretion regarding whether to forgive accrued arrears (which forgiveness would be tantamount to a retroactive modification) or to award judgment for the entire past-due amount. If in this case the trial court's refusal to prospectively modify support is within its discretion, and I believe it is, it

follows that its refusal to retroactively modify support is also within its discretion.