In re the Marriage of Patricia L. ROONEY, Petitioner, Respondent,

v.

Michael T. ROONEY, Respondent,

and

Christ's Household of Faith, third-party Respondent, Appellant,

and

Ramsey County, Intervenor, Respondent.

No. A03–53.

Court of Appeals of Minnesota.

Sept. 16, 2003.

Joseph F. Schmidt, Minneapolis, MN, for Respondent Patricia L. Rooney.

Michael T. Rooney, St. Paul, MN, pro se.

Christopher D. Johnson, Rebecca A. Chaffee, Hazel J. Uy, Best & Flanagan LLP, Minneapolis, MN, for Appellant.

Susan Gaertner, Ramsey County Attorney, Amy A. Anderson, Assistant County Attorney, St. Paul, MN, for Respondent.

Considered and decided by SCHUMACHER, Presiding Judge, RANDALL, Judge, and KALITOWSKI, Judge.

## OPINION

ROBERT H. SCHUMACHER, Judge.

Appellant Christ's Household of Faith (CHOF) challenges the district court's de-

termination that it is a "payor of funds" under Minn.Stat. § 518.6111 (2002), for child support withholding purposes, contending that the application of that statute to CHOF results in excessive governmental entanglement in CHOF's religious affairs in violation of the federal and state constitutions. CHOF also challenges the district court's determinations that it could decide a remand under the statute replacing the statue under which the remand was ordered, that a religious institution providing in-kind benefits to a church member can be a "payor of funds" under Minn.Stat. § 518.6111, that CHOF's withholding obligation commenced in 1990, and that laches does not apply to this case. CHOF further disputes the amount of the support and maintenance arrears for which it is responsible. We affirm in part, reverse in part, and remand.

## FACTS

Respondents Patricia L. Rooney and Michael T. Rooney were married in 1964 and became members of CHOF in 1966. The church's doctrine requires that members devote themselves and any property they have to the church, sacrificing all rights to payment for services given and relinquishing rights to all material possessions. In return, the church supports its members.

In 1987 Patricia Rooney left the church. The parties' marriage was dissolved in 1988. Patricia Rooney was awarded custody of four of the couple's minor children, and Michael Rooney (Rooney) was awarded custody of two of the couple's minor children. It is undisputed that Rooney performed and continues to perform services for CHOF and CHOF-related entities. In the dissolution judgment, the district court estimated Rooney's earning capacity to be $24,000. Rooney was ordered to pay monthly child support of $600.52 and monthly spousal mainte-

nance of $250. At the time judgment was entered, Patricia Rooney was receiving welfare assistance from respondent Ramsey County. The judgment imposed on her no obligation to pay support to Rooney.

CHOF is a non-profit corporation operating a number of businesses, including Northstar Services. As a 501(d) corporation, CHOF is required by the IRS to provide each of its members with a partnership K-1 tax form. The K-1 form represents the division of the gross taxable income of CHOF by the number of its members. The record indicates that Rooney does not receive compensation from CHOF for his services other than room, board, certain in-kind benefits, and a $39.80 biweekly stipend that other CHOF members, even those not working, receive. Rooney's 1994 K-1 tax form shows income of $4,342.

In 1990, the district court ruled that CHOF was Rooney's "employer" under Minn.Stat. § 518.611 (1990), and ordered CHOF to perform income withholding to pay Rooney's child support and spousal maintenance obligations. Rooney was in arrears immediately on the $850.52 per month that he was ordered to pay for child support and spousal maintenance. In August 1990, CHOF's attorney sent the county a letter stating that it could not comply with all aspects of the withholding order, that CHOF and other CHOF-related entities and persons named in the withholding order were not parties to the proceeding but were not objecting to the withholding order. Thereafter, CHOF made some payments on Rooney's behalf.

In 1991, the district court affirmed a referee's order directing entry of judgment for support and maintenance arrears against CHOF and other CHOF-related entities and persons. CHOF appealed to this court and argued that it was not "an

employer" under Minn.Stat. § 518.611 (1990). This court reversed and remanded for a determination of whether CHOF had waived its right to an evidentiary hearing, whether CHOF was an employer, and what the total amount of CHOF's withholding obligations should be. *Rooney v. Rooney,* 478 N.W.2d 545 (Minn.App.1991) (*Rooney I*). No action was taken on the remand by the district court, CHOF, the parents, or the county until 2002.

In 1996, Rooney brought a motion to amend his child support and spousal maintenance obligations on the grounds that his circumstances had changed. Patricia Rooney moved for contempt based on claimed arrearages and to increase both child support and spousal maintenance. Rooney's motion was denied without a determination of whether CHOF was his employer. In 1997, the legislature repealed Minn.Stat. § 518.611 under which the remand had been ordered and replaced it with Minn. Stat. § 518.6111 (Supp.1997).

The evidentiary hearing ordered by this court in 1991 was held in June 2002. The child support magistrate found that CHOF was an employer as well as a "payor of funds" for purposes of Minn.Stat. § 518.6111 (2002), and ordered judgment for arrearages against CHOF back to January 2002, when CHOF was purportedly "joined" as a party to the case. CHOF sought review of this decision by the district court. The district court affirmed the magistrate's "employer" and "payor-of-funds" rulings, ruled that CHOF was responsible for arrearages dating back to the date it was served with the 1990 order for income withholding, and remanded the matter to the child support magistrate for a calculation of all arrearages. The resulting order found that CHOF, as Rooney's "employer" and as a "payor of funds" was responsible for $100,976.82 in support arrearages, and an additional $38,955.00 in maintenance arrearages. All arrearages of child support and maintenance were calculated based on the amounts ordered in the 1988 dissolution. CHOF appeals.

## ISSUES

1. Can the district court exercise subject-matter jurisdiction over a claim against a church for compliance with a child-support withholding statute without violating the federal or state constitution?

2. Did the district court exceed the scope of its remand by addressing whether CHOF was a "payor of funds" under Minn. Stat. § 518.6111 (2002)?

3. Did the district court err in ruling that CHOF was a "payor of funds" under Minn.Stat. § 518.6111 (2002)?

4. Did the district court abuse its discretion by refusing to invoke laches?

5. Did the district court err in holding that CHOF's liability for withholding started in 1990?

6. Did the district court err in the calculation of Rooney's arrears and the amount to be prospectively withheld by CHOF?

## ANALYSIS

■ 1. Whether subject-matter jurisdiction exists is a legal question that this court reviews de novo. *Kellar v. Von Holtum,* 605 N.W.2d 696, 700 (Minn.2000). CHOF argues that the application of the Minnesota child-support withholding statute in this case requires an unconstitutional inquiry into the relationship between the church and its members, and that the district court does not have subject-matter jurisdiction over such an inquiry. We disagree, and conclude that the district court may apply Minn.Stat. § 518.6111 (2002), to CHOF without excessive entanglement in CHOF's religious affairs.

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; ..." U.S. Const. Amend. I. The First Amendment applies to the states by virtue of the Fourteenth Amendment. *Cantwell v. State of Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940).

▪ To avoid violating the establishment clause, a state action must (1) have a secular purpose, (2) neither inhibit nor advance religion in its primary effect, and (3) not foster excessive governmental entanglement with religion. *Lemon v. Kurtzman,* 403 U.S. 602, 612, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). It is undisputed that this case involves a state action, the imposition on CHOF of the withholding obligation, that has a secular purpose, securing the payment of Rooney's support and maintenance obligations, that is religiously neutral. At issue in this case is whether imposition of the withholding obligation on CHOF excessively entangles the county with religion where determining the propriety of imposing a withholding obligation requires an examination of Rooney's relationship with CHOF to determine whether CHOF is an "employer" or "payor of funds" for purposes of Minn. Stat. § 518.6111 (2002). On this record, we conclude that there is no unconstitutional entanglement.

▪ Under the entanglement doctrine, the state must avoid inquiry into the internal decisionmaking and governance of the religious institution. *Jones v. Wolf,* 443 U.S. 595, 602, 99 S.Ct. 3020, 3025, 61 L.Ed.2d 775 (1979). There is no impermissible entanglement, however, when the dispute can be resolved according to "neutral principles of law." *Id.* at 602–04, 99 S.Ct. at 3025; *see Odenthal v. Minn. Conference of Seventh–Day Adventists,* 649 N.W.2d 426, 435 (Minn.2002) (applying neutral principles test to negligent counseling claim against member of clergy). These neutral principles of law must be developed and applied without particular regard to religious institutions or doctrine. *Jones,* 443 U.S. at 602–04, 99 S.Ct. at 3025–26.

Here, the withholding statute is a neutral law applying to all Minnesota employers. The withholding statute articulates a process by which a county may secure child support from an employer. As in *J.M. v. Minn. Dist. Council of the Assemblies of God,* whether the relationship between CHOF and Rooney makes CHOF subject to Minn.Stat. § 518.6111 (2002), can be determined by religiously neutral factors. *J.M. v. Minn. Dist. Council of the Assemblies of God,* 658 N.W.2d 589, 595–96 (Minn.App.2003) (applying neutral factors of employment law to determine whether church was pastor's employer in sexual exploitation suit). CHOF argues that the state should not impose its secular view of CHOF's relationship on its members. But, as *Jones* demonstrates, the point of the neutral principles test is to apply a purely secular perspective to a dispute, without inquiring into religious doctrine or practice. *Jones,* 443 U.S. at 604, 99 S.Ct. at 3026. Because a determination of whether a payor/payee relationship exists between CHOF and Rooney can be accomplished by application of neutral factors and principles of law, we conclude that the court has subject-matter jurisdiction.

▪ The Minnesota Freedom of Conscience Clause provides:

The enumeration of rights in this constitution shall not deny or impair others retained by and inherent in the people. The right of every man to worship God according to the dictates of his own con-

science shall never be infringed; . . . nor shall any control of or interference with the rights of conscience be permitted. Minn. Const. art. I, § 16. The Minnesota Constitution affords religious protections broader than those contained in the federal constitution. *State v. Hershberger*, 462 N.W.2d 393, 397 (Minn.1990). To excuse a law's imposition on religious freedom under the Minnesota Constitution, the government's interest must be one of peace, safety or against an act of licentiousness. *Murphy v. Murphy*, 574 N.W.2d 77, 81 (Minn.App.1998).

■ Minnesota courts apply a balancing test when analyzing whether a state regulation infringes a right under the freedom of conscience clause of the Minnesota Constitution. *Hill–Murray Fed'n of Teachers v. Hill–Murray High Sch.*, 487 N.W.2d 857, 865 (Minn.1992). The courts ask if (a) the objector's belief is sincerely held; (b) the state regulation burdens the free exercise of religious beliefs; (c) the state interest in the regulation is compelling; and (d) the state regulation uses the least restrictive means to effectuate a compelling interest. *Id.* There is no dispute that CHOF's beliefs are sincerely held. We therefore limit our analysis to the remaining three factors, and conclude that applying Minn.Stat. § 518.6111 (2002), to CHOF does not unduly impose on CHOF's religious freedom.

CHOF argues that the withholding statute compromises the church's faith, hinders religious practice and requires the church to act contrary to its doctrine. To determine the burden on CHOF, we must look at whether CHOF is forced to change its religious conduct or philosophy due to imposition of the statute.

In *Hill–Murray*, the Minnesota Supreme Court found that application of the Labor Relations Act to secular employees of a parochial school did not violate the First Amendment because the terms and conditions of employment were not related to church doctrine and were negotiable. *Id.* at 866. Furthermore, interference with school authority was minimal, the school retained the power "to require compliance with religious doctrine," and any person failing to follow the religious standards could be removed. *Id.* In *Odenthal*, the Minnesota Supreme Court held that a statute regulating unlicensed mental health care professionals did not force the church to change its religious conduct or philosophy because clergy members retained the right to practice counseling and the church continued to retain the power over the clergy's compliance with church doctrine. *Odenthal*, 649 N.W.2d at 442.

Here, CHOF requires that its members relinquish their possessions and most external sources of income. The church then provides support for those members. A consequence of doing so is that it may later be required to meet child-support obligations on behalf of a member. Indeed, the record shows that CHOF has made numerous child-support payments on behalf of Rooney, and continues to do so on behalf of other church members. CHOF does not contend that these payments were a burden on its right to free exercise of religion. CHOF remains free to require its members to give their possessions and income to the church. Further, because CHOF chooses to exist as a non-profit corporation, it is subject to tax and corporate law that may not apply if it existed as a church only. CHOF does not argue that requiring it to follow these laws is an excessive burden. We do not see that applying Minn.Stat. § 518.6111 (2002), is any greater burden on CHOF than requiring it to provide its members with K–1 tax forms. Withholding income from Rooney and forwarding this amount to Ramsey County is not a complicated bookkeep-

ing task. We conclude that applying the withholding statute to CHOF does not excessively burden CHOF's right to exercise its religious beliefs.

■■■■ As we have noted, the Minnesota Constitution provides greater protections to the practice of religion than the federal constitution. *Hershberger,* 462 N.W.2d at 397. Thus, if applying Minn. Stat. § 518.6111 to CHOF does not violate the Minnesota Constitution, it also does not violate the lesser protections of the federal constitution. The Free Exercise Clause of the United States Constitution affords the absolute right to hold any religious belief, but it does not absolutely protect religiously-based conduct. *Employment Div., Dep't of Human Resources of Oregon v. Smith,* 494 U.S. 872, 877–79, 110 S.Ct. 1595, 1599–1600, 108 L.Ed.2d 876 (1990). An individual's religious beliefs may not excuse a failure to comply with otherwise valid laws concerning conduct subject to state regulation. *Id.* at 878–79, 110 S.Ct. at 1600. An individual cannot seek First Amendment exemption from a neutral law of general applicability. *Id.* We have observed that Minn.Stat. § 518.6111 (2002), is applicable to all obligors and their employers, without respect to religion. This law applies generally; it is neither directed toward a religious entity, nor does it affect religious entities differently than others in similar economic relationships. We conclude that requiring CHOF to comply with Minn.Stat. § 518.6111 does not infringe on CHOF's right to free exercise of religion under the federal constitution.

■■■■ Following this court's decision in *Murphy,* the compelling nature of the state's interest in securing child support from Rooney cannot be challenged. *Murphy,* 574 N.W.2d at 82 (stating "[w]e hold the state has a compelling interest in assuring parents provide primary support

for their children"). CHOF argues that this interest does not extend beyond Rooney to the church. We disagree. As Ramsey County notes, CHOF's argument would lead to the rather bizarre conclusion that the state has a compelling interest in ordering child support to be paid by an obligor, but not in collecting it. The state has a compelling interest in securing child support from Rooney, and this interest *must* extend to CHOF, or any other entity that can be required to perform income withholding for Rooney, if that interest is to have any meaning.

■■■■ CHOF argues that the state did not use the least restrictive means by which to achieve its interest in securing child support for the Rooney children. The least restrictive means of securing child support is for the obligor to pay support voluntarily. Rooney's court-ordered obligations, however, have not been paid voluntarily. CHOF argues that the county and Patricia Rooney were under an obligation to pursue Michael Rooney's part-time employers and garnish his social security benefits before the church is approached. But the record indicates that there have been tax intercept and wage withholding actions against Rooney's part-time employers since 1996. As soon as Ramsey County knew that Rooney was collecting social security, it sent out a withholding notice. Ramsey County has garnished Rooney's "other employers" and has filed a withholding notice with the Social Security Administration. Rooney's driver's license was revoked in an attempt by Ramsey County to compel him to meet his child support obligation. None of these measures has succeeded.

Ramsey County has attempted a number of ways to secure Rooney's child support payments without success, and on this record pursuing CHOF under Minn.Stat. § 518.6111 (2002), is the least restrictive

means remaining available to achieve this goal. Because there is no undue imposition on CHOF's right to religious freedom, we need not address whether Minn.Stat. § 518.6111 falls into the "peace, safety, or against licentiousness" exception. *Murphy*, 574 N.W.2d at 81.

■ 2. On remand from this court, the district court found that for purposes of Minn.Stat. § 518.6111, CHOF was both Rooney's "employer" and a "payor of funds." Noting that *Rooney I* remanded for a determination of whether CHOF was Rooney's "employer," CHOF argues that the district court exceeded the scope of its remand by addressing whether CHOF was a "payor of funds." We disagree.

■ On remand, a district court must "execute [a reviewing court's] mandate strictly according to its terms" and lacks power to "alter, amend, or modify [that] mandate." *Halverson v. Village of Deerwood*, 322 N.W.2d 761, 766 (Minn. 1982). There is, however, "a well-recognized exception" to this rule. *McClelland v. McClelland*, 393 N.W.2d 224, 226 (Minn. App.1986), *review denied* (Minn. Nov. 17, 1986). Under that exception, courts apply an amended statute on remand if (a) the statute is amended between the time an appellate court remands a case and the time the district court renders its decision on remand; and (b) doing so will not alter rights that had matured or become unconditional, impose new and unanticipated obligations on a party, or work some other injustice. *Id.* at 226–27.

*Rooney I* remanded for a determination of whether CHOF was Rooney's "employer" for purposes of the then-existing Minn. Stat. § 518.611 (1990). *Rooney I*, 478 N.W.2d at 547. Before the remand was decided, however, the legislature repealed Minn.Stat. § 518.611 and replaced it with Minn.Stat. § 518.6111 (Supp.1997). *See* 1997 Minn. Laws ch. 203, art. 6, § 93

(repealing Minn.Stat. § 518.611 (1996)); 1997 Minn. Laws ch. 203, art. 6, § 48 (enacting Minn.Stat. § 518.6111 (Supp. 1997)). *McClelland's* change-in-the-law prong is satisfied here.

■ For two reasons, we conclude that *McClelland's* lack-of-prejudice prong is also satisfied. First, "[t]here is no vested right in an existing law nor in an action until *final* judgment has been entered therein." *Holen v. Minneapolis–St. Paul Metro. Airports Comm'n*, 250 Minn. 130, 136, 84 N.W.2d 282, 287 (1957) (emphasis in original); *see McClelland*, 393 N.W.2d at 226–27 (applying *Holen* in appeal after remand in family-law context). Here, *Rooney I* remanded the case. The "reconsideration of a case on remand (and a subsequent appeal) is a continuation of the original proceeding." *Mattson v. Underwriters at Lloyds of London*, 414 N.W.2d 717, 720 (Minn.1987). No final judgment had been entered, and CHOF had no right to the resolution of the case under Minn. Stat. § 518.611 (1990), and the *Rooney I* decision based on that law.

Second, while *Rooney I* remanded for a determination of whether CHOF was Rooney's "employer," that remand was ordered under Minn.Stat. § 518.611 (1990), which required an "employer or payor of funds" to withhold the relevant amounts, but defined neither "employer" nor "payor of funds." Minn.Stat. § 518.611, subd. 2(b) (1990). The 1997 legislation included a definition of "payor of funds" which has not been altered since it was adopted. *Compare* Minn.Stat. § 518.6111, subd. 1(b) (Supp.1997) (original definition of "payor of funds") *with* Minn.Stat. § 518.6111, subd. 1(b) (2002) (current definition of "payor of funds"). Statutory amendments clarifying or defining previously undefined terms may be read into a statute retroactively. *Carlson v. Lilyerd*, 449 N.W.2d 185, 191

(Minn.App.1989), *review denied* (Minn. Mar. 8, 1990); *see Rural Am. Bank of Greenwald v. Herickhoff*, 485 N.W.2d 702, 708 (Minn.1992) (stating while "[o]rdinarily" statutes are not applied retroactively, amendments seeking only to clarify "may be applied retroactively" because "the legislature is not changing its mind but is only making clear the legislative intent that was always there") (citations omitted); *Nardini v. Nardini*, 414 N.W.2d 184, 196 (Minn.1987) (stating "a clarifying act is to be read into statutory law retrospectively"). Comparing Minn.Stat. § 518.611 (1990), and Minn.Stat. § 518.6111 (2002), we find that for purposes of identifying who is obligated to perform income-withholding, the only relevant difference between the statutes is that Minn.Stat. § 518.611 (1990), lacks the definition of "payor of funds" included in Minn.Stat. § 518.6111 (2002). The results should have been the same under either statute, and the district court's use of the current statute could not have prejudiced CHOF. The district court did not exceed the scope of its authority on remand by addressing whether CHOF was a "payor of funds" under Minn.Stat. § 518.6111 (2002).

■ 3. CHOF challenges the determination that it is a "payor of funds" for purposes of Minn.Stat. § 518.6111. A "payor of funds" is "any person or entity that provides funds to an obligor, including an employer as defined under chapter 24 of the Internal Revenue Code, section 3401(d), an independent contractor, payor of worker's compensation benefits or unemployment benefits, or a financial institution as defined in section 13B.06." Minn. Stat. § 518.6111, subd. 1(b). Because the statute refers to "any person or entity" providing funds "including" those listed in the statute, we reject CHOF's attempt to invoke Minn.Stat. § 645.19 (2002), and the concept of *inclusio unius est exclusio al-*

*terius* to argue that an entity not listed in the statute cannot be a "payor of funds."

The Internal Revenue Code provision referenced in the definition of "payor of funds" defines "employer." It provides in part:

(d) Employer.—For purposes of this chapter, the term "employer" means the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that—

(1) if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term "employer" (except for purposes of subsection (a)) means the person having control of the payment of such wages[.]

26 USCA § 3401(d) (West 2000). Under the Code, "wages" include both traditional cash-based pay and "remuneration ... paid in any medium other than cash." 26 U.S.C.A. § 3401(a) (West 2000). Thus, for purposes of Minn.Stat. § 518.6111, a "payor of funds" includes an entity for which a support obligor performs services and which provides the obligor with remuneration, cash-based or otherwise. Here, it is undisputed both that Rooney performs services for CHOF and CHOF-related entities, and that CHOF provides Rooney with a cash-based stipend, room and board, and other in-kind remuneration. The remuneration CHOF provides Rooney qualifies as "wages" under 26 U.S.C.A. § 3401(a), which makes CHOF Rooney's employer for purposes of 26 U.S.C.A. § 3401(d), which in turn makes CHOF a "payor of funds" for purposes of Minn. Stat. § 518.6111. As a "payor of funds," CHOF is subject to the statutory withholding requirements.

The district court correctly ruled that CHOF was a "payor of funds" and because being a payor of funds is sufficient to

impose a withholding obligation, we need not address the parties' disputes regarding whether CHOF is Rooney's "employer" for purposes of Minn.Stat. § 518.6111.

■ 4. Under the doctrine of laches, "when one sits on one's rights for too long a time, that person's claim should be estopped from continuing because it would be inequitable to require the defendant to fight the suit." *Gully v. Gully,* 599 N.W.2d 814, 825 (Minn.1999). Whether to apply laches "depends upon the facts of the particular case and rests largely with the discretion of the trial court." *Corah v. Corah,* 246 Minn. 350, 357, 75 N.W.2d 465, 469 (1956). Here, CHOF admits that laches does not apply to child support obligations, but it argues that the delay in seeking a hearing on remand entitles CHOF to invoke laches against any withholding-related obligation arising out of the remand. We reject this argument because it incorrectly assumes that Patricia Rooney or the county had the primary burden of proceeding on remand.

Generally, "it is the trial court's duty to insure that a remand hearing is held." *Grilli v. State,* 378 N.W.2d 823, 825 (Minn. App.1985). This general rule, however, "may be modified by the particular holding in an individual case[.]" *Id.* Because the holding of *Rooney I* does not indicate that it was modifying the presumptively-applicable general rule, the primary duty of holding the hearing on remand was on the district court. When the district court did not set a hearing date, the Rooneys, CHOF, and the county all had numerous procedural options for seeking, and if necessary compelling, the setting of a hearing date. None of them did. As found by the district court in its order remanding the matter to the child support magistrate,

there "is plenty of blame to go around for the failure to more promptly initiate remand proceedings and to answer unresolved questions in this case." The record supports this finding.

■ 5. The district court found that CHOF's liability for withholding dates back to August 20, 1990. On appeal, CHOF alleges this is wrong because *Rooney I* reversed the withholding order and no withholding obligation has been imposed since that time. This is incorrect. CHOF appealed an April 25, 1991 district court order affirming the referee's February 21, 1991 order which, among other things, (a) noted CHOF had been ordered to perform withholding on May 14, 1990, (b) found CHOF had made payments on support but not maintenance or arrears, (c) awarded mother judgment against CHOF and CHOF-related entities and persons for support and maintenance arrears, and (d) directed that income withholding "will continue ..., pursuant to the [May 14, 1990 order]." On appeal, this court reversed "the trial court's judgment against [CHOF] as an ex-spouse's employer for payment of maintenance and child support obligations under Minn.Stat. §§ 518.611 and 518.613." *Rooney I,* 478 N.W.2d at 547. Thus, this court reversed the portion of the 1991 judgment against CHOF for arrears. It did not address, reverse, or otherwise review the unappealed May 14, 1990 decision requiring CHOF to withhold. It is undisputed that CHOF received the May 14, 1990 withholding order and attempted to comply with it starting no later than August 1990. The district court correctly determined that CHOF's obligation to perform withholding dated from August 20, 1990.[1]

1. As exemplified by the child support magistrate's February 2002 order addressing the "joinder" of CHOF as a party to this proceeding, the record, the parties, and the court are less than clear about when CHOF became a party to these proceedings. It is clear howev-

6. CHOF argues that because it gives stipends to its members who are nonworkers as well as members who are workers, the stipend should not be treated the same as amounts earned by child-support obligors working in a more traditional arrangement. But for purposes of child support, income includes "any form of periodic payment[,]" including "unemployment benefits[,]" which (like the CHOF stipends to nonworkers) are paid to nonworkers. Minn.Stat. § 518.54, subd. 6 (2002). CHOF also appears to argue that because much of the remuneration it provides Rooney is in kind, to require it to perform withholding on Rooney's income, wages, or salary as required by Minn.Stat. § 518.6111, subd. 5, is to impute income to CHOF and that there is no authority allowing a court to impute income to a payor of funds. Because CHOF's various in-kind disbursements to Rooney pay or reduce his living expenses, they can be considered when determining his income and ability to pay support. *Cf.* Minn.Stat. § 518.551, subd. 5(b)(1) (2002) (noting "net income" for support purposes includes "in-kind payments received by the obligor in the course of employment" if those payments "reduce the obligor's living expenses"); Minn.Stat. § 518.551, subd. 5(c)(1) (2002) (requiring district court to consider "all earnings, income and resources of the parents" when setting support); *Darcy v. Darcy*, 455 N.W.2d 518, 521 (Minn.App.

1990) (noting breadth of requirement that court consider earnings, income, and resources, and stating "[t]he exact parameters of what may or may not be used to satisfy or set a support obligation have not been fully determined").

On this record, however, we cannot affirm the calculation of the arrears or the amount of the prospective withholding requirement. In setting the arrears and the withholding requirement, the child support magistrate denied CHOF's request to conduct additional discovery as well as CHOF's request for an evidentiary hearing on issues including the value of the services provided by Rooney and the value of the remuneration provided by CHOF. The child support magistrate did so citing First Amendment concerns, the scope of the remand ordered by the district court, the lack of evidence that the value of Rooney's services, as found to be $24,000 in the dissolution judgment, have changed, the fact that the remand was to enforce rather than modify the existing obligation, and because the child support magistrate believed he lacked jurisdiction to modify spousal maintenance. These concerns are rendered no longer applicable in light of our rejection of CHOF's First Amendment arguments, the 15 years that have passed since the judgment's $24,000 valuation of Rooney's services, our holding that any motion to modify maintenance or support

er, that any objection CHOF had to the court exercising personal jurisdiction over it was waived when, in August 1990, its attorney sent a letter to the county stating that complying with all aspects of the May 1990 withholding order was not possible, that CHOF and others named in the withholding order were not parties to the proceeding, but not objecting to the existence of the withholding obligation and expressing CHOF's "interest in fully complying with the Court's order." *See* Minn. R. Civ. P. 12.08 (addressing waiver of objection to lack of personal jurisdiction); *Patterson v. Wu Family Corp.*, 608 N.W.2d

863, 867–68 (Minn.2000) (same). It was CHOF's lack of full compliance with the withholding order that prompted the 1991 proceedings and the appeal in *Rooney* I, which resulted in the remand from which this appeal is taken. "The reconsideration of a case on remand (and a subsequent appeal) is a continuation of the original proceeding." *Mattson v. Underwriters at Lloyds of London*, 414 N.W.2d 717, 720 (Minn.1987). Because CHOF has been a party to this proceeding (at least for withholding purposes) since before the first appeal was taken, there was no need to "join" CHOF on remand.

either prospectively or retroactively shall be combined with the remand we order here, and the fact that we are remanding this case to the district court. Therefore, on remand, the parties may (a) conduct reasonable discovery; (b) conduct an evidentiary hearing; and (c) combine any motion to modify support or maintenance either prospectively or retroactively with the recalculation of arrears and the prospective withholding obligation.

By notice of review, Patricia Rooney challenges the applicability of the withholding limits in Minn.Stat. § 518.6111, subd. 9(a), which states: "Amounts withheld from an employee's income must not exceed the maximum permitted under the Consumer Credit Protection Act, title 15 of the United States Code, section 1673(b)." *Rooney I* holds that the "income withholding procedure is analogous to a garnishment." *Rooney I*, 478 N.W.2d at 547. The limits provided in 15 U.S.C.A. § 1673(b) (West 2000) address the amount that can be garnished for child-support purposes. The district court did not err in ruling that the garnishment limits in Minn. Stat. § 518.6111, subd. 9(a), apply here.

### DECISION

Resolution of a question of income withholding under Minn.Stat. § 518.6111 (2002), does not violate the Establishment Clause of the United States Constitution where application of the statute does not excessively entangle the court with religious doctrine or practices. The application of Minn.Stat. § 518.6111 does not violate the right to free exercise of religion under the United States or Minnesota Constitutions where application of the statute is the least restrictive means available to vindicate the state's compelling interest in assuring adequate support of children. The district court did not err by deciding the remand under a statute replacing the

statute under which the remand was originally ordered, by concluding that a religious institution providing in-kind benefits to a church member can be a "payor of funds" under Minn.Stat. § 518.6111, or in determining the effective date of a withholding obligation under that provision. Nor did the district court abuse its discretion in ruling that, on the unique facts of this case, laches was not applicable. Because the district court's calculation of arrears and the amount to be withheld was impacted by our resolution of the First Amendment and other questions presented on appeal, we reverse and remand those aspects of the case.

**Affirmed in part, reversed in part, and remanded.**

RANDALL, Judge (concurring in part and dissenting in part).

I concur with the majority on issues 1, 2, and 3. Minnesota courts have subject matter jurisdiction, I find no violation of either the state or the federal constitution on these facts, and most certainly CHOF can reasonably be construed to be both payor of funds and an employer of Michael Rooney.

I dissent on that part of the opinion addressing the retroactive date to which arrearages for maintenance and child support can be calculated. I conclude the CSM had it correct when he calculated arrearages only back to 2002 when CHOF was finally made a formal party and there was an actual hearing, 11 years after this court had reversed and remanded the case for such a hearing. I also conclude that arrearages, if any, should only be assessed against CHOF. At no time in the course of this case did Michael Rooney ever receive enough disposable cash from CHOF that he personally could ever pay any part of the originally imposed child support and maintenance. All personal judgments

against Michael Rooney should be vacated and the eventual arrearages and judgment calculated only against CHOF.

The 1988 dissolution judgment imputed income to Michael T. Rooney by subjectively assigning him a profession and then estimating his earning ability on this "estimated earning ability." Rooney was ordered to pay both child support for four children in the amount of $600.52 per month and spousal maintenance to Patricia Rooney in the amount of $250.00 per month. At that time, Patricia Rooney was receiving welfare assistance from Ramsey County. She has not received public assistance for years; yet, Michael Rooney's maintenance obligation has never had a meaningful review.

In February 2002, CHOF was finally joined as a party and finally got the evidentiary hearing granted them back in 1991! The evidentiary hearing took place on April 17, 2002. That hearing looked at the issue of whether CHOF was an employer for withholding purposes and did not calculate reasonable child support and spousal maintenance, even though the majority of Patricia Rooney's minor children, on which the original 1988 order was based, were now emancipated adults! Nor was her spousal maintenance recalculated, even though the figure had been set when she was receiving county assistance and had never been changed, and even though for years, through the present, she has been gainfully employed, and earns far in excess of Michael Rooney.

The child support magistrate found that CHOF was an employer for withholding purposes and ordered judgment for arrearages against CHOF back to January of 2002, the point when CHOF was a party and had its evidentiary hearing. CHOF appealed this decision to the district court, not arguing that January of 2002 was an unfair starting date, but rather continued its argument that the religious freedom clauses of the federal and state constitutions deprived courts of jurisdiction over whether they are "an employer" for purposes of employer withholding.

The district court upheld the magistrate's employment ruling, but then went on to reverse the magistrate's determination that 2002 was an appropriate starting date to calculate arrearages against CHOF and found, rather, that CHOF was responsible for arrearages dating back to the original 1990 withholding order. The district court remanded the matter back to the magistrate (CSM) for a calculation of all arrearages. That resulted in an order finding CHOF, as an employer of Michael Rooney, responsible for $100,976.82 in child support arrearages and $38,955.00 in spousal maintenance arrearages. All arrearages on child support and maintenance were based on the amounts ordered in the 1988 dissolution without regard to, even in the face of, an explicit reference in the record, for the fact that the majority of Michael Rooney's dependents had become emancipated years past. Patricia Rooney's present financial circumstances and needs were again not taken into account.

At every step of this case, Michael Rooney is recognized by the courts as being in good faith. In the 1977 order, the court recognized Michael Rooney's "good faith" in regards to his religious commitment.[2]

---

2. In the May 1997 order the district court stated:

Respondent's good faith pursuance of his religion is not a question. He is committed to and does follow the precepts of his beliefs. The assets which he owns are minimal and of only nominal value, ie. the family's clothing, a few pieces of furniture, a TV, a microwave and other small appliances which respondent values at having a total, aggregate value of not more than $500.00. Respondent has no car, no savings, no

There is no argument that Michael Rooney's beliefs are sincerely held.[3]

There is disagreement between the parties regarding whether this court's 1991 reversal vacated the entire withholding order against CHOF or just the order for arrears or just turned on the need for an evidentiary hearing. CHOF contends that the 1991 district court decision was in error, and since they prevailed on appeal, CHOF argues no present withholding order is in place, and any sporadic payments that CHOF made on behalf of Michael Rooney were voluntary (CHOF argues it does understand the need for obligors to help with their dependent children who have moved outside of "the CHOF family," and will help out while maintaining their stance that they are not required to).

CHOF is correct that they won on appeal in 1991. The case was reversed and remanded to the district court for answers that have been left unsaid for 11 years.

> We remand for the trial court to clearly enunciate answers to the following questions: (1) Did appellant by its conduct waive its right to an evidentiary hearing? (2) If not, is appellant an employer? (3) If so, what is the amount of Rooney's spousal maintenance and child support obligation?"

*Rooney v. Rooney*, 478 N.W.2d 545, 547 (Minn.App.1991).

This 1991 order specifically required that CHOF"s status as an employer and the amounts of Rooney's spousal maintenance and child support obligation be defined. CHOF won the appeal. The impe-

tus was not on CHOF to move forward on the remanded issues. The other parties and/or the district court, sua sponte, were responsible for calendaring, not CHOF. This case sat until January 10, 2002, over a decade later, when CHOF was joined as a party. On June 14, 2002 the order on remand was finally followed when an evidentiary hearing was held to determine CHOF"s status as an employer.

In the findings of fact, conclusions of law and order filed June 14, 2002, the child support magistrate found that CHOF"s withholding liability dated back to January 10, 2002, when it was joined as a party. Therefore, arrears would be assigned from that date. I find that conclusion of the CSM was a correct calculation of when arrearages, if any, should commence. I suggest CHOF is responsible for arrears dating back to January 10, 2002, the date at which it was joined as a party to these proceedings.

I would remand to the district court for a reasonable recalculation based on this date. The recalculation should take into account what dependent children, if any, Patricia Rooney had in her physical custody since that time. Patricia Rooney's financial circumstances, resources, and needs, as of January 2002 should be taken into account. The standards to be applied are the standards applied in all dissolutions when one party claims they are entitled to child support and/or spousal maintenance. I conclude the amounts ordered for child support and spousal maintenance stated in the 1988 dissolution were reversed and vacated in 1991. They need

---

checking, no investments, no retirement or pension. He is totally dependent upon the CHOF for his continued existence. Respondent does, however, have the ability to earn income but by reason of his religious commitment does not directly earn income.

**3.** In the January 21, 2003 order, the magistrate acknowledged this sincerely held belief

when he refused to grant an evidentiary hearing to re-determine the amount paid by CHOF stating such an examination would "require the close examination of details, mundane and sacred, of the relationship between a man and his church."

now to be validly redetermined. This should happen based on Michael and Patricia Rooney's *present* circumstances, including income as to both and the financial needs of both.

Arrearages for maintenance and child support against Michael Rooney and CHOF have accumulated while Michael Rooney's children have reached adulthood, and during the years when Patricia Rooney was employed with income exceeding Michael Rooney's income. Michael Rooney's arrearages kept accruing on the original basis! Further, some time between 1988 and the present time, Patricia Rooney obtained gainful employment, and since that time her gross and net earnings have far out stripped that of Michael Rooney.

The CSM's calculation of child support and spousal maintenance was based on the *1988* determination of support and facts associated with it. As stated, the circumstances for both parties have significantly changed since the original order. At the time of the calculation of spousal maintenance, Patricia Rooney was accepting Ramsey County assistance. The record indicates that recent income for Patricia Rooney of approximately $40,000 far exceeds Michael Rooney's income. There has been an emancipation of all but one minor child, as noted by the CSM in a footnote to his decision: "In all likelihood, child support is now payable for only one child, D.R., born September 16, 1986."

Right today, and for the last few years, the record is fairly clear that between Michael Rooney's K–1 income and his biweekly stipend, he grosses less than $6,000 per year.

Another point that should be cleared up is Michael Rooney's driving privileges, as he has in the past tried to supplement his meager income by delivering pizzas. At oral argument, CHOF's attorney pointed out that Michael Rooney, in years past, had his driver's license suspended upon the initiative of Ramsey County because of claimed child support arrearages. Counsel stated, and it was not refuted, that recently Michael Rooney did get his driver's license back, but that to this day Ramsey County has refused to acknowledge the validity of Michael Rooney's reinstatement. I would direct Ramsey County to acknowledge Michael Rooney's reinstatement of his driving privileges and to cooperate, if its cooperation is needed, for him to maintain his driving privileges.

In brief, the entire problem with this case as to both child support and maintenance, and so-called arrearages against CHOF and arrearages against Michael Rooney is that following this court's reversal in 1991, no one took the initiative to follow this court's directive and have a judicial determination as to whether CHOF was an employer/payor of funds and what was a reasonable amount of child support and maintenance from Michael Rooney to have to pay. None of this happened until 2002, and, even then, no accurate determination of Michael Rooney's reasonable needs and financial resources was made and no accurate determination of Patricia Rooney's financial resources and reasonable needs was made. All calculated child support and maintenance obligations and arrearages go back 15 years to when Patricia Rooney had four dependent children living with her and was on public assistance. That has not been true for several years. Yet, Michael Rooney never had an honest recalculation. A reasonable recalculation has to happen now before any enforceable judgment can be ordered, and that should be against CHOF, not against Michael Rooney.

This is not a case where an obligor making a substantial income quit that job and became voluntarily underemployed be-

cause he knew a dissolution was coming. These facts are exactly the reverse. Michael Rooney and Patricia Rooney, with their children, entered into a voluntary association with CHOF for at least 16 years. Patricia Rooney knew exactly that the financial circumstances were, as an understatement, extremely modest. Working for a religious organization is something like marriage, "for better or for worse, for richer or for poorer." She certainly had a right to leave CHOF, but neither she nor Ramsey County can now look backward and state that "Michael Rooney should have been making more and was worth more than that to CHOF," and "since he was 'worth more' to CHOF, child support and maintenance should be based on some hypothetical figure."

This situation is not that uncommon. Dedicated young physicians and lawyers, men and women, can shun the "big money" and dedicate part of their careers (or in some laudable instances, their entire careers) to working at extremely low wages for a various assortment of storefront clinics or law offices. For instance, there is the Indian Health Service, Southern Minnesota Regional Legal Services (SMRLS), neighborhood justice center, Legal Aid clinics, etc. When that person and their spouse, voluntarily enter into that arrangement for a number of years and have their minor children during that arrangement, that is a mutual choice of the parents. The one getting divorced and leaving later cannot be heard to say that child support and maintenance should be based "on what the obligor could have gotten had he or she taken a job with a large law firm or private for-profit clinic."

I concur in part, dissent in part, and would vacate any and all arrearages, whether for maintenance or for child support against Michael Rooney personally,

and assess fairly calculated arrearages against CHOF going back only to 2002.